**The TITLE GUARANTY COMPANY OF WYOMING, INC., Appellant (Plaintiff below),**

v.

**Logan BELT and Virginia Belt, d/b/a Petroleum Title Service, Appellees (Defendants below).**

**No. 4396.**

Supreme Court of Wyoming.

Aug. 22, 1975.

Robert R. Rose, Jr., Casper, for appellant.

Michael J. Sullivan, and W. F. Drew, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellees.

Before GUTHRIE, ·C. J., and McCLINTOCK and THOMAS, JJ.

McCLINTOCK, Justice.

Title Insurance Co. of Wyoming, Inc.[1] appeals from the order of the District Court of Natrona County dismissing its complaint against Logan Belt and Virginia Belt, d/b/a Petroleum Title Service. By this dismissal the district court determined that §§ 33–12 and 13, W.S.1957,[2] imposing

1. Hereinafter referred to as plaintiff. Mr. and Mrs. Belt will be referred to as defendants.

2. Section 33–12, being § 1 of Ch. 41, L. 1890–91 and continuing in that exact form since its enactment provides in pertinent part that

"Hereafter no person, company or corporation shall engage in or carry on the business of making or furnishing abstracts of title to any real estate within this state, without first having a full and complete set of abstract records of title of all the real estate situated in the county in which such business is carried on; * * * and such person, company or corporation shall also first enter into bond to the people of the State of Wyoming for the use of any person who shall sustain loss or damage by

restrictions upon the business of "furnishing abstracts of title" and imposing a fine of $500 for each and every failure to comply with the act, were penal in nature, subject to strict construction, and that, so construed, did not cover the activities of the defendants. The only question presented on this appeal is whether that determination was correct. We find that it was, and affirm the order of dismissal.

Plaintiff itself is not an abstract company under any known definition of the term and therefore is not in direct competition with defendants, but it is interested as owner of or partner in a number of firms commonly described as abstract companies, which maintain in their own offices abstract records and have filed the bond mentioned in the statute, and which firms plaintiff considers are being unfairly dealt with by defendants' alleged failure to comply with the statutes.[3] The pertinent facts have been established by the pleadings and an affidavit of Mrs. Belt concerning the manner in which they operate, and there is no dispute as to these facts.

Defendants' procedure is to examine records in the offices of the county clerk (wherein all conveyances and other instruments affecting title to real estate located in that county are by law required to be recorded), the county treasurer (concerned with the payment of taxes upon real property), and the clerk of the district court (wherein are found actions relating to real property or which may in due course of time create liens upon real property), and make complete photographic reproduction of all the instruments found in the county clerk's office affecting the title to the particular tract as to which title search is being effected. These photographic reproductions of the entire instrument itself are then incorporated in chronological order into a document entitled either "Abstract of Title" or "Photo Transcript of the Records." If the title being checked is in a county wherein defendants have an arrangement with a so-called bonded abstractor, that abstractor will execute a certificate to the effect that the pages as listed "constitute a true and correct Abstract of Title to lands described in the Caption." There will then follow a statement that:

> "[T]here are no Judgments, Transcripts of Judgments, Liens unsatisfied, or Suits Pending on file or of record in any Court of Record in said County, against any of the persons mentioned in said Abstract, which affect the title to the lands described in the Caption of said Abstract."

It is further certified that there are no unpaid taxes, or any unredeemed tax certificates of sale affecting the captioned lands. This certificate is signed by the bonded abstractor with this additional statement: "Liability under this Abstract

reason of the failure of any such person, company or corporation in the performance of his or their duty as such abstractor." Section 33-13, W.S. 1957, similarly in existence since the 1890-91 enactment, provides for a fine "of five hundred dollars, for each and every offense" for failure to comply with the provisions of the act.

3. Plaintiff's right to maintain the suit was originally challenged in the trial court but the district judge ruled in its favor on that point and in his order finds action for declaratory judgment was a proper proceeding to raise the question of defendants' right to do business in the manner hereinafter described.

Although captioned as "Order" and specifically dismissing the action, the basis for this is stated in the order to be that defendants' acts complained of by plaintiff did not constitute "abstracting" within the meaning of the applicable statute. The writer personally questions whether dismissal is the proper form of judgment where declarations favorable to the defendants are made but neither party has objected to the form and whatever its form the order is clearly a final disposition of the claims of the parties. Under Wyoming procedure the entry of an order sustaining a demurrer or dismissing the action do not appear to be unusual methods of disposing of declaratory judgment actions on the merits, see *Anderson v. Wyoming Development Co.*, 60 Wyo. 417, 154 P.2d 318 (1944).

assumed by PETROLEUM TITLE SERVICE * * *."

If the defendants do no have such an arrangement with a bonded abstractor, the instruments will be prepared in the same way, that is, the document will contain photographic reproductions of the entire pertinent instruments but the caption of the document is "Photo Transcript of the Records" and the certificate substitutes the words "Photo Transcript of the Records" for the words "Abstract of Title" as contained in the former instrument. The certificate as to judgments, liens and suits, as well as taxes is in exactly the same language, and the certificate also states that "Liability under this Transcript is assumed by Petroleum Title Service." There is then no execution of the document by any bonded abstractor but the certificate is signed by one of the defendants.

█ Plaintiff, whose subsidiaries or associated companies are shown to have a similar arrangement with Deister, Ward and Witcher, another company which appears from the affidavit of Mrs. Belt to operate in the same way that the defendants do, does not attack or otherwise question the legality of the arrangement whereby the "Abstract of Title" is prepared and certified as above stated, but does claim that in preparing the "Photo Transcript of the Records" defendants are engaging in the business of abstracting and are therefore in violation of the requirements of the statute in not having the specified equipment and not having filed a bond. To reach this end it relies heavily on the essential similarity between the two types of documents. While we see little distinction between the two documents, the real question is what meaning the 1890–91 legislature attached to the term "abstracts of title." To arrive at that determination we must keep in mind the precept that "when a word has a well-settled meaning in the law at the time of usage it will be so understood unless a different meaning is unmistakably intended," *School Districts v. Cook*, Wyo., 424 P.2d 751, 757 (1967), cit-

ing *Farmers Automobile Inter-Insurance Exchange v. MacDonald,* 59 Wyo. 352, 140 P.2d 905, 913 (1943), *In re Dragoni,* 53 Wyo. 143, 79 P.2d 465, 466–467 (1938). As was said in the first cited case, in turn quoting from 25 R.C.L. § 215, p. 959, in criticism of a tendency to construe laws in the light in which they appear when the construction is given,

" 'The true rule is that statutes are to be construed as they were intended to be understood when they were passed. Statutes are to be read in the light of the attendant conditions and the state of the law existent at the time of their enactment. The words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted. * * *' " 140 P.2d at 913.

*Dragoni* states the rule thus, 79 P.2d at 466–467:

"It is a rule of interpretation that words having a well-settled meaning in the jurisprudence of a country are to be understood in that sense when used in statutes unless a different meaning is unmistakably intended. Lewis' Sutherland, Stat.Cons. § 398."

Plaintiff has not cited us to any authority defining the word abstract as embracing a full and complete copy of the instruments included in a chain of title. As pointed out by defendants, Black's Law Dictionary, Revised Fourth Edition, p. 24, after distinguishing between a transcript and abstract in that the latter represents a summary or epitome, concentrating "in itself the essential qualities of a larger thing or of several things," defines abstract of title:

"A condensed history of the title to land, consisting of a synopsis or summary of the material or operative portion of all the conveyance, of whatever kind or nature, which in any manner affect said land, or any interest therein * * *."

1 Patton on Titles, Second Edition, § 41, p. 135, referring to the practice of furnishing a prospective buyer or mortgagee with an abstract of title, describes it as a

"series of synopses or summaries, usually arranged in chronological order, giving respectively the essential parts of the records of all deeds or other instruments upon which the title to a particular tract of land is based * * *."

1 Am.Jur.2d Abstracts of Title, § 1, p. 228 refers to it as giving in orderly form "the substance of documents or facts appearing on public record which affect title to real property."

Defendants point out and the trial judge was impressed with the fact that the statute is a penal one and therefore must be strictly construed, as held by this Court in *State v. Thompson*, 15 Wyo. 136, 87 P. 433 (1906), which said that such statute

"cannot be extended by implication or construction to persons or things not expressly brought within its terms, nor to cases not within the letter of the statute; and also, that 'all doubts as to the constructions are resolved in favor of the defendant.'"

See also *Baker v. Board of County Commissioners of Crook County*, 9 Wyo. 51, 56, 59 P. 797, 798 (1899); *State ex rel. v. Loucks*, 32 Wyo. 26, 33, 228 P. 632, 634 (1924); *Brown v. Jarvis*, 36 Wyo. 406, 408, 256 P. 336, 337 (1927).

■ The definitions of abstract, legal and general, do not appear to have changed over the years but the practice has developed of making photographic reproductions of the entire instruments comprising the chain of title. We do not believe that we may properly hold these documents to be abstracts, as that term was used in 1890 when the present statute was enacted. The difference in terminology, styling one document an abstract and the other a photo transcript of the records appears to us of no importance but we do not believe that

we may substitute a new definition for that apparently accepted by the legislature and being the definition still generally accepted.

We have not been apprised as to the purpose of this statute but if there is some state purpose to be served by the requirement that any person furnishing information found in the county records, whether in shortened or verbatim form, shall maintain his own records and furnish a bond, we think that that purpose should be effected by the legislature and not by this Court. Judicial interpretation of the word abstract in a manner different from what it has consistently been throughout these many years is not the proper way to achieve that goal. New methods of procedure may indicate the desirability of broadening the definition of what constitutes the business of "abstracting." However, the fact that the legislature has not been interested in making such change is clearly shown by its failure to adopt legislation, Senate File 170, 1971, and Senate File 40, 1969. In *Farmers*, speaking of the failure of the legislature to enact legislation which would have specifically permitted the plaintiff to do business (the obverse of the present case) after the insurance commissioner had expressly construed the existing statute as not permitting the exchange to do business in Wyoming, it was said:

"* * * [W]e think that while not conclusive nor even controlling in any degree in the determination of the questions at bar, it may not be overlooked in our examination of this cause." 140 P. 2d at 917.

■ We agree with the trial court that defendants' activities did not constitute conducting an abstract business within the meaning of the statute.

The order of dismissal is affirmed.